UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MALDONADO REYES,                    )
                                    )
            Petitioner,             )
                                    )
      v.                            )        CAUSE NO. 3:13-CV-293 WL
                                    )
SUPERINTENDENT,                     )
                                    )
            Respondent.             )

OPINION AND ORDER

Maldonado Reyes, a *pro se* prisoner, filed a habeas petition challenging a prison disciplinary

proceeding. (DE 1.) In MCF #13-01-0085, a hearing officer found Reyes guilty of possessing a cell

phone in violation of disciplinary rule #B207. (DE 5-7.) The charge was initiated on January 5,

2013, when Sergeant G. Gapski wrote a conduct report stating as follows:

> On above date and approximate time [1-5-13 at 1:39 p.m.], Captain Tucker had
> received a phone call from an outside source that stated that there was probably a cell
> phone in cell F-437/438. He asked me to shake down the cell and "stay in there until
> I found the cellphone." When I walked up to the cell, I had my pod officer roll the
> door immediately. I walked in and both offenders had a startled look on their faces.
> I ordered them both to step back towards the window and asked them if they had
> anything in the cell that they shouldn't. They both replied by stating that neither of
> them did. I then ordered offender Reyes, Maldonado #905765 to begin stripping out.
> He removed his jumpsuit and placed it on the floor. He then started attempting to
> untie a shoestring that was hidden in his boxer shorts. I took a step forward to block
> him in case he would attempt to throw whatever the object was. As he was fumbling
> with it, the object fell to the ground in front of him with a "clank." He began to bend
> down and pick it up and I put my foot in front of him to block it and ordered him to
> back up. I then scooted it away from him and continued with the strip search. The
> object that fell to the ground was inside a partial sock. When I took it out, I found a
> Verizon flip phone from Samsung. The model number is SCH-U360. Also inside the
> package was another Samsung battery and an LG phone charger. I didn't find
> anything else on either offender, so we placed them both in the dayroom, and
> proceeded to search the cell. No other contraband was found in the cell so we placed
> both offenders back in there.

(DE 5-1 at 1.) A picture of the phone, battery, charger, and sock was also taken. (*Id.* at 3.)

On January 8, 2013, Reyes was formally notified of the charge and given a copy of the conduct report. (DE 5-1, 5-2.) He pled not guilty, requested a lay advocate, and requested witness statements from his cell mate Brock Sage and Officer R. Thomas. (DE 5-2.) He did not request any physical evidence. (*Id.*) Statements were obtained from the witnesses prior to the hearing. Officer Thomas stated, "Was not working that day and had not physically witnessed anything." (DE 5-4.) Sage submitted a statement as follows:

> The cell phone belonged to me (Brock Sage 213461). When the Sgt. came to our cell, he stripped us out. While my cell mate (the accused) was taking his clothing off, I was able to kick the phone by his clothes. The number that was texted that called in, was an ex-girlfriend, and her boyfriend called (according to C/O Thomas), and that number was matched to my address book. My cell mate wasn't even in the prison 24 hrs., and was stripped searched 2 [sic] before getting here. There is no way possible he obtained the phone.

(DE 5-3.)

On January 15, 2013, the hearing officer conducted a hearing on the charge. (DE 5-7.) Reyes submitted a written statement claiming that the phone belonged to Sage. (DE 5-8.) He further stated that he had been told by Officer Thomas that the officer had a conversation with another prison employee outside of work hours, who told Officer Thomas that Sage had allegedly used the phone to text his girlfriend. (*Id.*) Nevertheless, based on the evidence, the hearing officer found Reyes guilty. (DE 5-7.) His administrative appeals were denied (DE 5-8 to 5-10), and he thereafter filed this petition.

When a due process liberty interest is at stake in prison disciplinary hearings, the Fourteenth Amendment guarantees prisoners certain procedural due process protections: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence in defense when consistent with

institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there must also be "some evidence" in the record to support the disciplinary decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Reyes raises a number of claims that are premised on alleged violations of Indiana Department of Correction ("IDOC") policies. However, even if IDOC rules were violated in connection with the hearing, this would not entitle him to federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (habeas relief is only available for a violation of the U.S. Constitution or other federal laws); *Hester v. McBride*, 966 F. Supp. 765, 775 (N.D. Ind. 1997) (violation of IDOC policy in disciplinary proceeding could not support grant of habeas relief, since federal habeas court "does not sit to correct any errors of state law"). Accordingly, these claims must be denied.

Reyes also claims that he was denied exculpatory evidence. A prisoner has a limited right to present witnesses and evidence in his defense consistent with correctional goals and safety. *Wolff*, 418 U.S. at 566. A hearing officer has considerable discretion with respect to witness and evidence requests, and may deny requests that threaten institutional safety or are irrelevant, repetitive, or unnecessary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Inmates do not have an unfettered right to call live witnesses or to confront or cross-examine witnesses, since the formal rules of evidence do not apply. *Piggie*, 342 F.3d at 666; *Walker v. O'Brien*, 216 F.3d 626, 637 (7th Cir. 2000). Furthermore, due process only requires access to witnesses and evidence that are exculpatory. *See Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992) (due process only requires production of "exculpatory" evidence); *see also Meeks v. McBride*, 81 F.3d 717, 721 (7th Cir. 1996) ("exculpatory evidence" in this context means evidence that "directly undermines the reliability of

the evidence in the record pointing to [the prisoner's] guilt"). The denial of the right to present

evidence will be considered harmless unless the prisoner shows that the evidence could have aided

his defense. *See Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011) (inmate was not prejudiced by

inability to call witness whose proposed testimony would not have exculpated him from the charge).

Here, the record shows that Reyes requested statements from two witnesses at the time of

screening, and those statements were obtained and considered. Reyes now claims that Officer

Thomas wrote a second "clarifying" statement and slid it under the hearing officer's door on an

unspecified date; however, there is no such statement contained in the record, nor is there evidence

that the hearing officer actually received the alleged statement prior to the hearing.[1] Reyes cannot

fault the hearing officer for failing to consider evidence that was not properly presented to him. *See*

*Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002).

Assuming the statement was timely prepared and submitted to the hearing officer, to

establish a due process violation Reyes must demonstrate prejudice. Although unclear, it appears

Reyes wanted Officer Thomas to testify about the information he had received regarding Sage's use

of the phone. (*See* DE 1-2 at 13.) However, the hearing officer was already well aware of Reyes's

claim that the phone belonged to Sage, as well as Sage's own statement taking responsibility for the

phone. He nevertheless chose to credit the account of Sgt. Gapski that Reyes was wearing the phone

inside a sock tied to his underwear, and that the officer actually saw (and heard) the phone fall out

of Reyes's clothing. Furthermore, the charge against Reyes was for possessing the phone, not

---

[1]    Along with his traverse, Reyes submits statements from two other inmates claiming that they overheard
Officer Thomas say he put a second statement under the hearing officer's door. (DE 11 at 3-13.) This evidence is not
part of the administrative record, and Reyes has not  explained why he should be permitted to expand the record in this
habeas case. In any event, even if these statements were considered, they would not establish a due process error for the
reasons stated above.

owning or using it. Second or third hand information about Sage's past use of the phone would not have directly undercut Sgt. Gapski's eyewitness account. Accordingly, Reyes has not demonstrated a due process error.

Reyes also claims that he was denied a copy of a prison log book, but there is no evidence he requested the log book when he was given an opportunity to do so. (*See* DE 5-2.) He cannot fault the hearing officer for failing to consider evidence he did not properly request. Even if he properly requested this piece of evidence, he has not demonstrated prejudice. It appears he wanted the log book to show that he had only recently arrived at the prison. (DE 1 at 5.) However, there is no dispute that Reyes had only recently arrived at the prison, and the hearing officer was aware of this information from Reyes's and Sage's statements. (DE 5-6.) Regardless of when Reyes may have arrived at the prison, there was direct evidence that he was in the possession of the phone when Sgt. Gapski searched his cell. Reyes has not established a due process error in connection with the log book. Therefore, this claim is denied.

Reyes next claims there was insufficient evidence of his guilt. The relevant standard is whether there is "some evidence" to support the guilty finding. *Hill*, 472 U.S. at 457. This is not a high standard, and in assessing the sufficiency of the evidence courts do not "conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). The court will overturn a guilty finding based on insufficient evidence only if "no reasonable adjudicator could have found [the prisoner] guilty of the offense on the basis of the evidence presented." *Henderson v. United States Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994). Furthermore, a hearing officer

is permitted to rely on circumstantial evidence to establish guilt. *See Hamilton v. O'Leary*, 976 F.2d 341, 345 (7th Cir. 1992).

Upon review, there is sufficient evidence to support the hearing officer's determination that Reyes was guilty of possessing a cell phone. Sgt. Gapski provided an eyewitness account that he saw and heard the phone fall out of Reyes's clothing, and his statement alone was sufficient. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002) (witness statement constituted some evidence); *McPherson*, 188 F.3d at 786 (conduct report alone provided some evidence to support disciplinary determination). Reyes makes much of Sage's statement taking responsibility for the phone, but Sage may well have had his own motivations for taking responsibility, unrelated to his own guilt. Indeed, one could certainly find Sage's statement suspect, given that he claims to have put the phone in Reyes's clothing to avoid being caught with it, only to later decide that he would accept full responsibility. His account is also inconsistent with Sgt. Gapski's report that only Reyes was stripping when the phone was discovered. Regardless, weighing the relative credibility of the witness statements was a task for the hearing officer, not this court. *McPherson*, 188 F.3d at 786. Even if Sage actually owned the phone or used it in the past, the charge was for *possessing* a cell phone, and there is direct evidence in the record that Reyes was in possession of the cell phone on the date in question. Thus, the some evidence test is satisfied. *See Hill*, 472 U.S. at 457 ("Although the evidence in this case might be characterized as meager, and there was no direct evidence identifying any one of three inmates as the assailant, the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.").

Reyes next claims that he was denied an impartial decision-maker. In the prison disciplinary context, adjudicators are "entitled to a presumption of honesty and integrity," and the constitutional

standard for improper bias is high. *Piggie*, 342 F.3d at 666. Due process is violated if a prison official who is substantially involved in the underlying incident also acts as a decision-maker. *Id.*; *Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995). Reyes does not allege that occurred here, nor is there any indication from the record that the hearing officer was involved in the underlying incident leading to the disciplinary charge. Instead Reyes appears to claim that the hearing officer was biased because he found him guilty, but adverse rulings alone do not establish impermissible bias. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994).

Although unclear, he may also be claiming that the charge was initiated or pursued for improper reasons. "[P]risoners are entitled to be free from arbitrary actions of prison officials." *McPherson*, 188 F.3d at 787. However, "even assuming fraudulent conduct on the part of prison officials, the protection from such arbitrary action is found in the procedures mandated by due process." *Id.* In other words, the protections to which Reyes was entitled were the protections afforded by *Wolff*, and as explained above, he has not demonstrated a violation of these rights.

For these reasons, the petition (DE 1) is **DENIED**.

SO ORDERED.

ENTERED: December 4, 2013

s/William C. Lee
William C. Lee, Judge
United States District Court